No. 26-______

# In the United States Court of Appeals for the Third Circuit

IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION

*ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA*
*(RELATED TO E.D. PA. CASE NOS. 16-MD-2724, 20-CV-00695, 18-CV-03299, 19-CV-04862, 20-CV-06303, HON. CYNTHIA M. RUFE, PRESIDING)*

## PETITION FOR A WRIT OF MANDAMUS [REDACTED]


MICHAEL S. SOMMER
STUART A. WILLIAMS
*Wilson Sonsini Goodrich & Rosati, PC*
*31 W. 52nd St., Fifth Floor*
*New York, NY 10019*
*(212) 999-5800*

TRINA A. HIGGINS
ALICE C. VADEN
*Wilson Sonsini Goodrich & Rosati, PC*
*95 S. State St., Suite 1000*
*Salt Lake City, UT 84111*
*(801) 401-8510*

STEFFEN N. JOHNSON
JEFFREY C. BANK
JOHN B. KENNEY
*Wilson Sonsini Goodrich & Rosati, PC*
*1700 K Street, N.W.*
*Washington, DC 20006*
*(202) 973-8000*
*sjohnson@wsgr.com*

*Counsel for Defendant-Petitioners Mylan Inc. and Mylan Pharmaceuticals, Inc.*


*[Additional counsel listed on following pages]*

BRIAN T. FEENEY
*Greenberg Traurig, LLP*
*1717 Arch Street, Suite 400*
*Philadelphia, PA 19103*
*(215) 988-7812*

ROGER KAPLAN
AARON VAN NOSTRAND
*Greenberg Traurig, LLP*
*500 Campus Drive, Suite 400*
*Florham Park, NJ 07932-067*
*(973) 360-7900*

*Counsel for Defendant-Petitioner Dr. Reddy's Laboratories, Inc.*

JOHN M. TALADAY
CHRISTOPHER P. WILSON
EDWARD W. DUFFY
JOANNA B. ADKISSON
MICHAEL A. MUNOZ
*Baker Botts LLP*
*700 K Street NW*
*Washington, DC 20001*
*(202) 639-7700*

LAURI A. KAVULICH
*Clark Hill PLC*
*2001 Market Street*
*Suite 2620*
*Philadelphia, PA 19103*
*(215) 640-8500*

GRANT ESPOSITO
DAVID FIOCCOLA
*Proskauer Rose LLP*
*Eleven Times Square*
*New York, NY 10036*
*(212) 969-3000*

CHRISTOPHER ONDECK
*Proskauer Rose LLP*
*1001 Pennsylvania Ave., NW*
*Suite 600 South*
*Washington, DC 20004*
*(202) 416-5865*

*Counsel for Defendant-Petitioners Sandoz Inc. and Fougera Pharmaceuticals Inc.*

GEORGE G. GORDON
JULIA CHAPMAN
*Dechert LLP*
*2929 Arch Street*
*Philadelphia, PA 19104-2808*
*(215) 994-2382*

D. BRETT KOHLHOFER
*Dechert LLP*
*1900 K Street NW*
*Washington, D.C. 20006*
*(202) 261-3349*

*Counsel for Defendant-Petitioner Lannett Company, Inc.*

LINDSAY S. FOUSE
*Clark Hill PLC*
*301 Grant St, 14th Floor*
*Pittsburgh, PA 15219*
*(412) 394-7711*

*Counsel for Defendant-Petitioners Taro Pharmaceuticals U.S.A., Inc., Taro Pharmaceutical Industries Ltd., and Sun Pharmaceutical Industries Inc.*

DOUGLAS M. TWEEN
JOHN W. EICHLIN
*Linklaters LLP*
*1290 Avenue of the Americas*
*New York, NY 10104*
*(212) 903-9072*

*Counsel for Defendant-Petitioner Strides Pharma Inc.*

BRIAN J. SMITH*
JORDANNE M. STEINER
*Wilson Sonsini*
*Goodrich & Rosati, PC*
*1700 K Street, N.W.*
*Washington, DC 20006*
*(202) 973-8000*
**Admitted to practice only in Illinois & Maine*

ANGELA L. BROWN
*Wilson Sonsini*
*Goodrich & Rosati, PC*
*31 W. 52nd St., Fifth Floor*
*New York, NY 10019*
*(212) 999-5800*

*Counsel for Defendant-Petitioner Mayne Pharma Inc.*

J. CLAYTON EVERETT, JR.
WILLIAM S.D. CRAVENS
Y. FRANK REN
*Morgan, Lewis & Bockius, LLP*
*1111 Pennsylvania Avenue, NW*
*Washington, DC 20004*
*1.202.739.3000*

STEPHEN D. LABRECQUE
*Morgan, Lewis & Bockius, LLP*
*1 Federal Street*
*Boston, MA 02110*
*1.617.341.7700*

HARVEY BARTLE IV
*Morgan, Lewis & Bockius, LLP*
*2222 Market Street*
*Philadelphia, PA 19103*
*1.215.963.5000*

*Counsel for Defendant-Petitioners Perrigo Company plc and Perrigo New York, Inc.*

## CORPORATE DISCLOSURE STATEMENTS

Defendant-Petitioners make the following disclosures under Federal Rule of Appellate Procedure 26.1 and Third Circuit L.A.R. 26.1:

1. Dr. Reddy's Laboratories, Inc. is a wholly owned subsidiary of Dr. Reddy's Laboratories, S.A. Dr. Reddy's Laboratories, S.A. is a wholly owned subsidiary of Dr. Reddy's Laboratories Ltd., which is a publicly held Indian corporation. No publicly held company owns 10% or more of Dr. Reddy's Laboratories Ltd.'s stock.
2. Fougera Pharmaceuticals, Inc. is an indirect wholly owned subsidiary of Sandoz Group AG. Sandoz Group AG is a publicly held company, the shares of which are traded on the SIX Swiss Exchange under the ticker symbol SDZ, and whose American Depository Receipts are traded on the over-the-counter market in the United States. There are no publicly traded companies between Fougera Pharmaceuticals, Inc. and Sandoz Group AG.
3. Lannett Company, Inc. has no parent company, and no publicly traded company owns more than 10% of Lannett Company, Inc.'s stock.

4. Mayne Pharma Commercial LLC (f/k/a Mayne Pharma Inc.) is a directly wholly owned subsidiary of Mayne Pharma Group Ltd., a publicly traded company. No other publicly traded company owns more than 10% of Mayne Pharma Inc.'s stock.
5. Mylan Pharmaceuticals, Inc. is a wholly owned subsidiary of Mylan Inc. Mylan Inc. is immediately owned entirely by Mylan Holdings Sub Inc. Mylan Inc. is a wholly owned indirect subsidiary of Viatris Inc. Viatris Inc. is a publicly held company organized and existing under the laws of Delaware. Viatris Inc. does not have a parent corporation and no publicly held corporation owns 10% or more of its stock.
6. Perrigo New York, Inc. is an indirect wholly owned subsidiary of Perrigo Company plc, a publicly traded company. Blackrock Inc. and T. Rowe Price Associates, Inc., publicly traded companies, hold 10% or more of Perrigo Company plc's stock. No other publicly held companies hold 10% or more of Perrigo Company plc's stock.
7. Sandoz Inc. is an indirect, wholly owned subsidiary of Sandoz Group AG. Sandoz Group AG is a publicly held company, the

shares of which are traded on the SIX Swiss Exchange under the ticker symbol SDZ, and whose American Depository Receipts are traded on the over-the-counter market in the United States. There are no publicly traded companies between Sandoz Inc. and Sandoz Group AG.

8. Strides Pharma, Inc.'s ultimate parent company is Strides Pharma Science Limited, a publicly listed company of which the shares are traded on BSE Ltd under the scrip code 532531 and on the National Stock Exchange of India Ltd under the scrip code STAR. There are no publicly traded companies between Strides Pharma, Inc. and Strides Pharma Science Limited.

9. Sun Pharmaceutical Industries, Inc. is a wholly-owned indirect subsidiary of Sun Pharmaceutical Industries Limited, a publicly-held company organized and existing under the laws of India. Sun Pharmaceutical Industries Limited does not have a parent corporation and no publicly held corporation owns 10% or more of its stock.

10. Taro Pharmaceuticals U.S.A., Inc. is a wholly-owned indirect subsidiary of Taro Pharmaceutical Industries Ltd. Taro Pharmaceutical Industries Ltd. is a wholly owned indirect subsidiary of Sun Pharmaceutical Industries, Ltd., a publicly-held company organized and existing under the laws of India. No other company owns 10% or more of Taro Pharmaceutical U.S.A., Inc.'s stock.

# TABLE OF CONTENTS

Page

RELIEF SOUGHT .......... 1

QUESTIONS PRESENTED .......... 1

INTRODUCTION .......... 2

FACTUAL BACKGROUND .......... 8

REASONS FOR GRANTING THE WRIT .......... 16

I. The district court clearly and indisputably erred in ruling that Rule 1.11(c) does not require Nielsen's and Lowey's disqualification. .......... 17

  A. The district court clearly and indisputably erred in adopting an atextual exception to Rule 1.11(c). .......... 19

  B. The district court clearly and indisputably erred in interpreting Rule 1.11(c) as requiring Defendants to disclose the details of the confidential government information in Nielsen's possession. .......... 28

  C. The district court clearly and indisputably erred in determining that Nielsen and Lowey did not need to be disqualified. .......... 31

II. Defendants have no other adequate means for relief from the district court's order. .......... 34

III. Issuance of the writ is appropriate in these circumstances. .......... 37

  A. Mandamus review of disqualification rulings is appropriate. .......... 37

  B. The district court's disqualification order will irreparably harm Defendants. .......... 38

CONCLUSION .......... 41

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Allied Realty of St. Paul, Inc. v. Exch. Nat'l Bank*,
283 F. Supp. 464 (D. Minn. 1968) .......... 33, 40

*Am. Roller Co. v. Budinger*,
513 F.2d 982 (3d Cir. 1975) .......... 18, 24

*Anne Arundel Cnty. v. Express Scripts, Inc.*,
2025 WL 254807 (D. Md. Jan. 21, 2025) .......... 27

*Bogosian v. Gulf Oil Corp.*,
738 F.2d 587 (3d Cir. 1984) .......... 7, 39

*Brown v. D.C. Bd. of Zoning Adjustment*,
486 A.2d 37 (D.C. 1984) .......... 28, 39

*Cheney v. U.S. Dist. Court for Dist. of Columbia*,
542 U.S. 367 (2004) .......... 16, 34, 37

*Cipollone v. Liggett Grp., Inc.*,
785 F.2d 1108 (3d Cir. 1986) .......... 34

*Fallon v. Mercy Catholic Med. Ctr.*,
877 F.3d 487 (3d Cir. 2017) .......... 17

*Firestone Tire & Rubber Co. v. Risjord*,
449 U.S. 368 (1981) .......... 34, 37

*Gen. Motors Corp. v. City of New York*,
501 F.2d 639 (2d Cir. 1974) .......... 23, 39

*Gillette v. Prosper*,
858 F.3d 833 (3d Cir. 2017) .......... 16

*Haines v. Liggett Grp.*,
Inc., 975 F.2d 81 (3d Cir. 1992) .......... 7, 39

*Handelman v. Weiss*,
368 F. Supp. 258 (S.D.N.Y. 1973) .................................................. 39

*Hollingsworth v. Perry*,
558 U.S. 183 (2010) ......................................................................... 16

*In re Am. Airlines, Inc.*,
972 F.2d 605 (5th Cir. 1992) ......................................... 6, 17, 18, 19,
34, 36, 37, 38

*In re Am. Cable Publications, Inc.*,
768 F.2d 1194 (10th Cir. 1985) ........................................... 7, 17, 38

*In re Asbestos Sch. Litig.*,
46 F.3d 1284 (3d Cir. 1994)............................................................. 7

*In re Barnett*,
97 F.3d 181 (7th Cir. 1996) ................................................. 6, 17, 38

*In re Boy Scouts of America*,
35 F.4th 149 (3d Cir. 2022) ......................................................... 5, 32

*In re The City of New York*,
607 F.3d 923 (2d Cir. 2010)........................................................... 35

*In re Dresser Indus.*,
972 F.2d 540 (5th Cir. 1992) .................................................... 18, 37

*In re Generic Digoxin & Doxycycline Antitrust Litig.*,
222 F. Supp. 3d 1341 (J.P.M.L. 2017).............................................. 8

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*,
2017 WL 4582710 (J.P.M.L. Aug. 3, 2017) ..................................... 3

*In re Howmedica Osteonics Corp*,
867 F.3d 390 (3d Cir. 2017)...................................................... 17, 38

*In re Nat'l Prescription Opiate Litig.*,
2019 WL 1274555 (N.D. Ohio Mar. 20, 2019)..................... 5, 30, 32

*In re National Prescription Opiate Litigation*,
2024 WL 3387288 (N.D. Ohio Mar. 18, 2024)............................... 27

*In re Sch. Asbestos Litig.*,
977 F.2d 764 (3d Cir. 1992) ........................................................ 39

*In re Shared Memory Graphics LLC*,
659 F.3d 1336 (Fed. Cir. 2011) ........................................... 7, 17, 38

*Kronberg v. LaRouche*,
2010 WL 1443934 (E.D. Va. Apr. 9, 2010) .................. 15, 20, 25, 26, 29, 32, 39

*Mallard v. U.S. District Court*,
490 U.S. 296 (1989) ........................................................................ 19

*Maxus Liquidating Tr. v. YPF S.A. (In re Maxus Energy Corp.)*,
49 F. 4th 223 (3d Cir. 2022) ................................................... 17, 18

*Merle Norman Cosms., Inc. v. U.S. Dist. Ct., Cent. Dist. of California*,
856 F.2d 98 (9th Cir. 1988) ........................................................... 35

*Rhone-Poulenc Rorer v. Home Indem. Co.*,
32 F.3d 851 (3d Cir. 1994) ................................................................. 7

*Tucker v. George*,
569 F. Supp. 2d 834 (W.D. Wis. 2008) .............................. 25, 30, 32

*Ullrich v. Hearst Corp.*,
809 F. Supp. 229 (S.D.N.Y. 1992) ............................................... 6, 36

*Unified Sewerage Agency v. Jelco, Inc.*,
646 F.2d 1339 (9th Cir. 1981) ........................................... 6, 17, 18, 35, 37, 39

*United States v. Miller*,
624 F.2d 1198 (3d Cir. 1980) ........................................................ 18

*United States v. Prevezon Holdings Ltd.*,
839 F.3d 227 (2d Cir. 2016) .................................... 6, 16, 19, 24, 33, 35, 36, 37, 38

*United States v. Standard Oil Co.*,
136 F. Supp. 345 (S.D.N.Y. 1955) .................................................. 40

*United States v. Villaspring Health Care Ctr., Inc.*,
2011 WL 5330790 (E.D. Ky. Nov. 7, 2011) .............................. 32, 36

*United States v. Wexler*,
31 F.3d 117 (3d Cir. 1994) .............................................................. 19

*United States v. Wright*,
776 F.3d 134 (3d Cir. 2015) ............................................................ 17

## STATUTES

28 U.S.C. § 1291 ............................................................................. 34

28 U.S.C. § 1292(b) ................................................................... 16, 34

28 U.S.C. § 1651(a) ........................................................................ 17

Conn. Gen. Stat. § 35-42 ................................................................. 8

## RULES

Local Rule 83.6 .............................................................................. 20

Pennsylvania Rule of Professional Conduct 1.11 ........................... *passim*

Fed. R. Evid. 408 ............................................................................ 10

## RELIEF SOUGHT

Defendant-Petitioners ("Defendants") seek a writ of mandamus requiring the district court (Rufe, J.) to disqualify Joseph Nielsen and his firm, Lowey Dannenberg, from representing Plaintiffs in these cases, including one scheduled for trial beginning September 15, 2026.

## QUESTIONS PRESENTED

1. Is Pennsylvania Rule of Professional Conduct 1.11(c)'s bar on former government attorneys representing a private plaintiff while possessing confidential government information that "could be used to the material disadvantage" of the opposing party inapplicable where the former government attorney promises not to share that information?

2. Does Rule 1.11(c) require the party seeking disqualification under the rule to disclose to both the court *and* the opposing party the specifics of the confidential government information that the former government attorney possesses, thereby destroying its confidentiality?

## INTRODUCTION

This mandamus petition arises from an egregious violation of the Pennsylvania Rules of Professional Conduct. As Connecticut Assistant Attorney General, Nielsen first led a government investigation into the generic pharmaceutical industry, and then related litigation, personally leading settlement negotiations, interviews with cooperating witnesses, and otherwise acquiring extensive confidential information about Defendants, their defenses, and their resolution strategies. Then, a week after leaving that post, Nielsen appeared for Molina and Humana in this MDL as a new partner at Lowey Dannenberg. Now, he pursues many of the *same claims* that he earlier pressed for the State, but for private financial gain. This is an obvious violation of Rule 1.11(c), which bars lawyers from representing private clients in cases where, while earlier in government service, they obtained "confidential government information" that "could be used in a subsequent proceeding to the material disadvantage of" an adverse party. Indeed, one of the country's foremost legal ethics experts calls this the "clearest . . . violation of Rule 1.11" he has "ever encountered." Appx60.

As Lowey's own press release boasted, Nielsen "headed a team of

54 states and U.S. territories prosecuting" drug makers for alleged conspiracies to "rais[e] the prices of generic drugs," and "Joe's deep knowledge" of the "evidence" will "well serve his new private clients" at "trial." Appx85-86. In remanding the States' case from this MDL, the JPML found that the government and private plaintiff cases "stem from the same government investigation," involve "significant overlap" in "factual and legal issues," and arise from "the same factual core." *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, 2017 WL 4582710, *1 (J.P.M.L. Aug. 3, 2017).

The district court nevertheless denied Defendants' motion to disqualify Nielsen and his law firm, finding "no violation" of Rule 1.11—even though Nielsen's lead role in the massive government investigation gave him extensive non-public knowledge useable to Defendants' disadvantage in Humana's upcoming bellwether trial, now set for September 2026, as well as in Humana's and Molina's other related cases. The court justified this extraordinary result by crediting Nielsen's "promise" not to share confidential information he obtained as a government enforcer and

reasoning that *Defendants* failed to detail precisely what confidential information he could use to their disadvantage. These clear and indisputable legal errors call out for review.

First, Rule 1.11(c) brooks no exception for "promises" of secrecy, especially since former government lawyers cannot keep information secret from *themselves*. The rule is mandatory and prophylactic: such lawyers "*may not* represent a private client whose interests are adverse to that person in a matter in which the information *could* be used to the material disadvantage of that person." Pa. R. Prof. Conduct ("PRPC") 1.11(c) (emphasis added). "Could" is the key word; material disadvantage need only be possible, not likely, let alone certain. And the record here is undisputed on this point, because Nielsen has admitted he obtained confidential information from Defendants while conducting settlement negotiations for Connecticut. Appx33. Indeed, that is why he is compelled to promise not to share that information with his new clients, co-counsel, or others. But the Rule does not excuse his violation.

Second, contrary to the ruling below, Rule 1.11(c) does not require the party seeking disqualification to disclose the specifics of the confiden-

tial government information that the former government attorney possesses. Rather, it is enough to show, as Defendants have here, that the attorney has confidential government information not possessed by his new private clients, and that the private matter is related to the government proceeding. At that point, courts presume that confidential government information relating to the same matter "could" be used to the opposing side's material disadvantage. *E.g.*, *In re Nat'l Prescription Opiate Litig.*, 2019 WL 1274555, *6 (N.D. Ohio Mar. 20, 2019). Here, however, the district court conditioned the Rule's protections on Defendants' disclosure of that information to not only the court but also *Plaintiffs*. That approach—forcing parties to disclose the very information they fear will be used against them—creates a catch-22 not countenanced by the Rule.

The district court's errors are "clear and indisputable," warranting mandamus. The court could excuse Nielsen's textbook violation only by applying limitations and exceptions found nowhere in Rule 1.11(c)'s text or cases applying it. Were it not for the court's errors, disqualification would be required for both Nielsen and his firm, as the governing factors (*see In re Boy Scouts of America*, 35 F.4th 149, 160 (3d Cir. 2022)) all cut against this attempt to knowingly profit from Nielsen's ethical violation.

Intervention is needed now, to prevent Nielsen from tainting not only Humana's bellwether trial—the first in this MDL—but dozens following in its wake. As the district court openly acknowledged, Humana's trial will inform those plaintiffs' "strategies," "evidence," "settlements," and "prepar[ation] for trial." Appx44. And as other courts have recognized in granting mandamus in similar circumstances, "[a]dverse use of confidential information is not limited to disclosure," but includes myriad strategic decisions—"what questions to ask" witnesses, "what lines of attack to abandon" or "pursue," "what settlements to accept" or "reject," and "innumerable other uses"—that Nielsen would make as Humana's lead counsel. *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 238 (2d Cir. 2016) (quoting *Ullrich v. Hearst Corp.*, 809 F. Supp. 229, 236 (S.D.N.Y. 1992)). If he is allowed to rely on confidential information to lead the trial strategy in this bellwether, that bell cannot be unrung.

Recognizing the threat of irreparable harm from erroneous disqualification orders, at least six circuits have recognized the propriety of mandamus review for such orders. *See Prevezon*, 839 F.3d at 242; *In re Am. Airlines, Inc.*, 972 F.2d 605, 628 (5th Cir. 1992); *In re Barnett*, 97 F.3d 181, 184 (7th Cir. 1996); *In re Am. Cable Publications, Inc.*, 768 F.2d

1194, 1197 (10th Cir. 1985); *In re Shared Memory Graphics LLC*, 659 F.3d 1336, 1342 (Fed. Cir. 2011); *Unified Sewerage Agency v. Jelco, Inc.*, 646 F.2d 1339, 1344 (9th Cir. 1981). Moreover, mandamus allows "immediate appellate review of orders compelling the disclosure of documents and information claimed to be protected from disclosure[.]" *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 861 (3d Cir. 1994). This Court frequently grants mandamus in such cases, recognizing that "to delay review . . . is to deny it altogether." *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 591 (3d Cir. 1984); *Haines v. Liggett Grp.*, Inc., 975 F.2d 81, 89 (3d Cir. 1992). Finally, "the extraordinary size and complexity" of this MDL —"factors that diminish the utility of appellate review following final judgment—must be taken into account." *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1295 (3d Cir. 1994). Because Nielsen's participation will have cascading effects throughout this significant and complex MDL, the "safety valve in the final-judgment rule" provided by mandamus review is warranted. *Id.* In sum, this Court should intervene now to prevent Nielsen (and his firm) from continuing to commit the "clearest . . . violation of Rule 1.11" seen in years. Appx60.

## FACTUAL BACKGROUND

This petition arises from four cases brought by Molina and Humana that are part of multi-district litigation alleging certain pharmaceutical manufacturers engaged in anticompetitive conduct to raise generic drug prices. Each complaint "stem[s] from the same government investigation." *In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1343 (J.P.M.L. 2017). Beginning in 2014, and before any private plaintiff had sued, that sprawling investigation was spearheaded by Nielsen, then Connecticut's Assistant Attorney General.

For two years, Nielsen ran that investigation alone. Appx95. He undertook extensive efforts to collect and review evidence, issuing over 300 civil investigative demands under Conn. Gen. Stat. § 35-42. Appx95. Section 35-42 prohibits the government from making CID productions "available to the public."

Over time, Nielsen built a "massive document database of over 20 million documents, and a phone records database containing millions of call detail records[.]" Appx110. Nielsen eventually bought a special software to help him "analyze nearly 12 million phone logs." Appx95-96.

Beyond this extensive work, Nielsen also received confidential proffers from attorneys representing those seeking to avoid litigation and interviewed cooperating witnesses. For example, Nielsen arranged for counsel for a cooperating witness to "talk offline" with him—and without other plaintiffs—[redacted] Appx260. Nielsen also communicated about the investigation with other government agencies, Appx218-219, and Connecticut has asserted "common interest privilege" to protect those communications from disclosure, Appx303-304.

Nielsen ultimately filed three complaints on behalf of Connecticut and more than 50 other states and territories. As lead counsel, he personally signed two, and his name appeared on all three. These complaints targeted Defendants and involved "the same or similar claims" at issue in all four cases from which this Petition arises. Appx2. Other private suits filed by health insurance companies, hospitals, pharmacies, and dozens of other plaintiffs followed. Those complaints were eventually consolidated into this MDL. Appx28.

While leading the government's proceedings, Nielsen also participated in confidential settlement negotiations with defendant companies

and their employees, including successful negotiations with Heritage Inc., Appx112-141, Apotex Corp., Appx142-201, and three former Sandoz employees, Appx262-289. [redacted] Nielsen also engaged in settlement negotiations on behalf of the States that did not result in final agreements and has already improperly disclosed confidential information he learned during one of those conversations.[1] Nielsen admits receiving confidential information in these negotiations. Appx33.

In July 2025, Nielsen left his government enforcer position and became a partner at Lowey, which represents several private plaintiffs in this MDL. Appx85-86, 105-106. Lowey's press release celebrated Nielsen's move, touting that his "deep knowledge of evidence" would "well serve his new clients as their cases head to trial." Appx86. Nielsen

[1] Sandoz's counsel raised the issue of a Rule 408 violation when Nielsen disclosed in open court—even after a warning from the judge not to do so—information about Sandoz's confidential financial circumstances he learned during their settlement negotiations. Appx207-208, 211-212.

promptly appeared in these four cases (one for Molina, three for Humana). Appx45-52.

Within 48 hours of Lowey's announcement, Defendants raised their ethics concerns with the district court. Appx214-215. Lowey dismissed them, stating it had conducted diligence on the issue. Appx214-215.

Lowey also confirmed that it did not screen Nielsen from its cases relating to his government work, Appx53-54; indeed, Nielsen is now *lead counsel* for Humana and Molina. *See* Appx30. No limits were placed on Nielsen's work for his new private clients. Appx53-54.

Defendants promptly moved to disqualify Nielsen and Lowey, citing Rule 1.11(c) and explaining that Nielsen had not been screened as required by the rule. Appx14-16. Specifically, Defendants argued that Nielsen had received confidential government information about Defendants during his ten years leading Connecticut's case. Because Humana's and Molina's claims against Defendants rest on the same facts and theories, that information could be used to Defendants' material disadvantage. Appx14-16. Defendants identified at least five categories of confidential government information that Nielsen possesses: (1) information from settlement negotiations; (2) information from cooperating

witnesses; (3) information from other state and federal enforcers; (4) a subset of the documents received in response to Connecticut's 300 CIDs that were not in private plaintiffs' possession; and (5) strategic insights and roadmaps developed over Nielsen's decade as lead government enforcer. Appx14-15.

In support, Defendants included an expert report from Professor W. Bradley Wendel, a leading legal ethics authority. Appx60-82. Wendel analyzed Nielsen's role leading the States' investigation and litigation, the relevant background information, and whether his possession of such information while representing private plaintiffs in these cases violated Rule 1.11(c). Appx62-75. Ultimately, Wendel concluded that Nielsen's conduct was the "clearest instance [he] ha[d] ever encountered of a violation of Rule 1.11," and that, under the rules, Nielsen's conflicts must be imputed to Lowey as well because it failed to screen Nielsen. Appx60-61.

In response, Plaintiffs argued that given the MDL coordination between the States and the private plaintiffs and the court's Order requiring the State to produce documents obtained during Nielsen's investigation, information that Nielsen received in his role as a government en-

forcer was no longer confidential—or, if it was, could not be used to Defendants' material disadvantage. *See* Appx16-17. For many—but not all—of the categories of confidential government information in Nielsen's possession, Plaintiffs cited examples of sharing between the States and private plaintiffs of some—but not all—of that information. For example, Plaintiffs said they attended only "some" of the proffer meetings at which Nielsen received extensive confidential information. Appx17n.6.

Even if Nielsen had properly shared all of that confidential information with Plaintiffs—and he did not—Plaintiffs did not dispute in the least that Nielsen has confidential information from his role leading the government's settlement negotiations. Rather, Nielsen's sworn declaration stated that he had not discussed information from settlement negotiations with anyone at Lowey, would not participate in any settlement negotiations, and would not share that information with co-counsel or Plaintiffs. Appx227. Plaintiffs insisted that this promise avoided any Rule 1.11(c) violation, or, alternatively, that even if Nielsen broke his promise, *Defendants* had not proven that his use of confidential information from the settlement negotiations would harm them. Appx16-18.

The motion was referred to Special Master Lawrence F. Stengel, who generally adopted Plaintiffs' arguments in his Report and Recommendation. Appx8-27. Strangely, he posited both that (1) Nielsen had already shared any once-confidential government information in his possession with Plaintiffs, such that Nielsen's representation of Humana and Molina could not materially disadvantage Defendants; and (2) Nielsen's promise not to share information from confidential settlement negotiations was "compelling." Appx23-24, n.10. The Special Master did not explain how Nielsen could simultaneously have *already shared* all information he possesses with Plaintiffs while committing to *never sharing* the information he possesses from confidential settlement negotiations with Defendants.

The Special Master also criticized Defendants for not disclosing sufficient detail about the confidential government information that Nielsen possesses. Appx14n.4. But the Special Master rejected Defendants' offer to supplement their filing with an *ex parte in camera* filing addressing that issue, ruling that any filing had to be served on Plaintiffs—thereby destroying its confidentiality. Appx14n.4.

Defendants objected to the Report and Recommendation, explaining that although there were disputes about whether certain data had already been shared with Plaintiffs, it was undisputed that confidential information that Nielsen received in settlement negotiations had not been shared. Appx4. Defendants argued that this alone established a Rule 1.11(c) violation, Appx4, 41-42, and that conditioning a party's ability to invoke Rule 1.11(c) on a requirement that it disclose its confidential information to an opposing party would eviscerate the rule, Appx41-42.

The district court overruled Defendants' objections and adopted the Special Master's Report and Recommendation. Appx1-7. Like the Special Master, the court was unmoved by Nielsen's admission that he possesses confidential government information from settlement negotiations, "credit[ing]" his "promise" not to disclose that information to his "clients or other MDL parties." Appx4. The court never addressed the fact that Nielsen himself possesses this information, or the fact that it will inevitably affect his strategic decision-making, given that he "surely ha[s] a mental roadmap concerning [Defendants]" that "was shaped at least in part by his access to confidential government information." *Kronberg v. LaRouche*, 2010 WL 1443934, *4 (E.D. Va. Apr. 9, 2010).

Defendants moved to certify the court's order for review under 28 U.S.C. § 1292(b). Appx30. On May 13, 2026, the court denied that motion. Appx44.

## REASONS FOR GRANTING THE WRIT

Mandamus is warranted where the petitioning party "establish[es] that (1) 'no other adequate means [exist] to attain the relief he desires,' (2) the party's 'right to issuance of the writ is clear and indisputable,' and (3) 'the writ is appropriate under the circumstances.'" *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (quoting *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380-81 (2004)); *Gillette v. Prosper*, 858 F.3d 833, 841 (3d Cir. 2017). "These hurdles, however demanding, are not insuperable." *Cheney*, 542 U.S. at 381.

The district court's ruling here easily clears this bar. Its atextual reading of Rule 1.11(c) is a "clear and indisputable" error. Nielsen's leading role in this MDL's first bellwether trial renders it impossible for Defendants to receive meaningful relief after final judgment—a point underscored by the dozens of follow-on plaintiffs watching this case. And disqualification rulings with consequences that are virtually impossible to remedy post-trial are frequently reviewed on mandamus. *Prevezon*,

839 F.3d at 242; *Am. Airlines*, 972 F.2d at 628; *Unified Sewerage Agency*, 646 F.2d at 1344; *Shared Memory Graphics*, 659 F.3d at 1342; *Barnett*, 97 F.3d at 184; *Am. Cable Publications*, 768 F.2d at 1197. This Court should likewise grant that relief and prevent the irreparable harm that would result from Nielsen's continued participation.

## I. The district court clearly and indisputably erred in ruling that Rule 1.11(c) does not require Nielsen's and Lowey's disqualification.

The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A writ of mandamus is warranted here because the court below committed "a clear and indisputable 'abuse of discretion'" and "error of law." *In re Howmedica Osteonics Corp*, 867 F.3d 390, 401 (3d Cir. 2017) (quoting *United States v. Wright*, 776 F.3d 134, 145-46 (3d Cir. 2015)).

District court "denial[s] of disqualification as a sanction" are reviewed "for abuse of discretion." *Maxus Liquidating Tr. v. YPF S.A. (In re Maxus Energy Corp.)*, 49 F. 4th 223, 228-29 (3d Cir. 2022). But errors of law are by definition an abuse of discretion, *Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 494 (3d Cir. 2017), and the proper interpretation

of Rule 1.11(c) is “a question of law subject to de novo review,” *Maxus Energy Corp.*, 49 F.4th at 228-29. As the relevant “facts are undisputed,” “the district court's interpretation of the state disciplinary rules” is “subject essentially to de novo consideration.” *In re Dresser Indus.*, 972 F.2d 540, 543 (5th Cir. 1992). Indeed, this Court has held that “whether . . . disciplinary rule[s] prohibit[] certain professional conduct . . . ‘leave little leeway for the exercise of discretion.’” *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980) (quoting *Am. Roller Co. v. Budinger*, 513 F.2d 982, 985 n.3 (3d Cir. 1975)).

Cases like this, which “raise[] several questions pertaining to the proper interpretation and application of ethical standards in disqualification cases,” are well suited for mandamus review. *Am. Airlines*, 972 F.2d at 609. As the Ninth Circuit has explained, “question[s] of law” involving interpretation of ethics rules are “suitable for review” on “mandamus.” *Unified Sewerage Agency*, 646 F.2d at 1344 n.3. “When the facts are undisputed, district courts enjoy no particular advantage over appellate courts in formulating ethical rules to govern motions to disqualify.” *Dresser*, 972 F.2d at 543. Accordingly, multiple circuit courts have found that district courts' incorrect interpretations or applications of ethical

rules created a clear and indisputable right to mandamus relief. *E.g.*, *Prevezon*, 839 F.3d at 241; *Am. Airlines*, 972 F.2d at 620.

That is the situation here. The district court denied disqualification by embracing two faulty interpretations of Rule 1.11(c), each of which constitutes clear legal error. Relying on these flawed interpretations, the court held that Nielsen's representation of Humana and Molina did not violate Rule 1.11(c). *See* Appx4-7. And because the decision not to disqualify Nielsen (and Lowey) rested on these errors, it was a "clear abuse of discretion." *See United States v. Wexler*, 31 F.3d 117, 128 (3d Cir. 1994) (quoting *Mallard v. U.S. District Court*, 490 U.S. 296, 309 (1989)).

### A. The district court clearly and indisputably erred in adopting an atextual exception to Rule 1.11(c).

First, the district court clearly and indisputably erred in holding that an attorney's "promise" not to share confidential government information with others excused what would otherwise be an obvious violation of Rule 1.11(c). *See* Appx4. Rule 1.11(c) states that a government attorney who has "confidential government information about a person acquired when the lawyer was a public officer or employee *may not* represent a private client whose interests are adverse to that person in a matter in which the information *could* be used to the material disadvantage

of that person." PRPC 1.11(c) (emphases added); EDPA Local Rule 83.6 (adopting Pennsylvania's rules). As the ABA has explained, "[t]he Rule does not require that the confidential government information has been or will be used by the lawyer, only that it *could* be used to the material disadvantage of a person." ABA Comm. on Ethics & Pro. Resp., Formal Op. 509 at 4-5 (2024).

Rule 1.11(c) is prophylactic, designed to "minimize or eliminate" the risks for "a private litigant . . . who finds himself facing the same prosecuting attorney now acting on behalf of a private party." *Kronberg*, 2010 WL 1443934, *5. The rule prevents former government lawyers from taking on representations where "unfair advantage *could* accrue to the private client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service." PRPC, Rule 1.11(c), cmt. 4 (emphasis added). By prohibiting such representation, the rule "diminishes the *risk* of subsequent misuse of information obtained by the government." Restatement (Third) of the Law Governing Lawyers, § 133, cmt. d (Am. Law Inst. 2000) (emphasis added). This is consistent with how other conflicts rules operate– "protect[ing] against the *risk* that a lawyer will disclose or make adverse

use of protected confidential information." Appx66. Accordingly, rather than prohibiting an actual prejudicial act, conflict rules, including Rule 1.11(c), prohibit conditions that create a risk of prejudice. Appx.66-67.

Rule 1.11(c) further serves the dual purposes of preventing the appearance of impropriety and encouraging cooperation with government officials. By preventing former government attorneys from appearing in a matter where they "could" use confidential government information to the other side's material disadvantage, the rule "removes an incentive to begin proceedings as a government agent with a view to obtaining a subsequent advantage in private practice, such as by filing a complementary action for a subsequent private client." Restatement (Third) of the Law Governing Lawyers, § 133, cmt. d (Am. Law Inst. 2000).

Here, the district court effectively wrote "could" out of Rule 1.11(c), allowing Nielsen to "exploit[] public office for the advantage of another client." PRPC 1.11, cmt. 3. Despite Nielsen's *admission* that he possesses confidential information about Defendants obtained while leading settlement negotiations for the government (at the very least), the district court "credit[ed]" Nielsen's "promise" not to "share" it, Appx4, and

thus found no violation of Rule 1.11(c), Appx6-7.[2] But that reasoning flouts the rule's text, which categorically prohibits all representations where information "could" be used to an opponent's material disadvantage. The word "could" is "used to indicate possibility," not certainty. *See Can*, Meriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/can. And the risk here is particularly acute in that *Nielsen himself is lead counsel litigating the case*, so his promise not to "share" the information externally does nothing to cure the problem of *his own* use of the information. The district court outright ignored this aspect of the problem.

Indeed, when the court applied Rule 1.11 to the facts, it repeatedly omitted the word "could"—changing the standard to whether, in the court's prospective judgment, disadvantage *would* occur. Appx36 ("[T]his Court determined that Nielsen's representation of the Plaintiffs *would* not materially harm the Defendants, and so there was no violation of Rule 1.11(c)."); Appx36 (violation turns on "whether what [Nielsen] knows *will* materially harm the Defendants" (emphasis added)); Appx35

[2] It is even more troubling that Nielsen made this promise only after his participation was challenged. Initially, Lowey stated that it had not set up *any* kind of screen on Nielsen's participation. Appx53-54.

("[T]he Court found no material disadvantage to Defendants."). But when a former government lawyer must promise not to use confidential government information he possesses, that necessarily means he *could* otherwise use it.

Precedent confirms that conclusion. Notably, courts have known for decades that this sort of government-to-private switch is clearly unethical. In *Gen. Motors Corp. v. City of New York*, 501 F.2d 639, 642 (2d Cir. 1974), for example, the Second Circuit disqualified a former Justice Department Antitrust Division lawyer who had investigated GM for the government and later was hired to bring a private lawsuit against GM involving that same conduct. As the court explained, the attorney "not only participated in the [prior] case," but (like Nielsen) "*signed the complaint in that action and admittedly had 'substantial responsibility' in its investigatory and preparatory stages*." *Id.* at 652 (emphasis added). "Where the overlap of issues is so plain, and the involvement while in Government employ so direct," the court held, "the resulting appearance of impropriety *must be avoided through disqualification*." *Id.* (emphasis added). One searches the Second Circuit's opinion in vain for any suggestion that the impropriety could be avoided if the former government

lawyer had only promised not to disclose what he knew to others, let alone a requirement that the opposing private party identify the specific confidential information that might prove prejudicial to its case.

This Court's decisions likewise foreclose the district court's focus on whether confidences *would*—versus *could*—be abused. As the Court put it in the related context of private-party confidential information, "[i]t is the *possibility* that confidences might be breached and not the *fact* of their disclosure or use that *dictates disqualification*." *Am. Roller*, 513 F.2d at 986 (emphasis added). That reasoning tracks the opinion of Defendants' expert, who explained that "[a] conflict exists because of, and at the moment there is, a *risk* of adverse use of confidential information." Appx66.

The Second Circuit likewise holds that "the concern is not simply the disclosure of confidential information but the use of that information in shaping trial strategy and questioning." *Prevezon*, 839 F.3d at 238. Here, as in *Prevezon*, "the danger [] is not limited to [Nielsen] overtly using confidences in the litigation," but rather "that [Nielsen], while not explicitly using confidences, may use such confidences to guide [his representation of Plaintiffs] in other ways." *Id.* "*A district court order to*

*prevent such conduct is unworkable*." *Id.* (emphasis added).

Given that baseline, courts unsurprisingly have rejected attempts to avoid disqualification via similar promises—even in cases with more benign facts. For example, *Tucker v. George*, 569 F. Supp. 2d 834 (W.D. Wis. 2008), involved two former government lawyers (and their firm) who had been privy to confidential information regarding a state investigation of the defendant. *See id.* at 836-838. The attorneys had never appeared in the case and, after ethical concerns were raised, they responded that "they remember[ed] little from the state's investigation" and "ha[d] not disclosed any information about [defendant] to anyone." *Id.* at 837. Unlike Nielsen, these two attorneys had not led the government's investigation of the defendant, committed not to have electronic or physical access to the case records, and prohibited their staff from discussing the case. *Id.* at 837, 839. But despite these promises, the court ordered disqualification of the firm, as it had failed to set up a screen until *after* the ethical issue had surfaced. *Id.* at 840-41.

Similarly, in *Kronberg* , the court disqualified an attorney pursuant to Rule 1.11(c) who had previously investigated the opposing party for the government, notwithstanding his argument that, "since he no longer

ha[d] access to any confidential information or documentation and 're-call[ed] very little,'" "he should not be deemed to possess actual knowledge of confidential government information." 2010 WL 1443934, *3. The passage of time and subsequent publication of some of the information from the investigation was not sufficient to avoid disqualification because "there [wa]s no way for [the attorney] to ensure that he w[ould] not remember confidential information or that he w[ould] be able to differentiate now, twenty years after learning the information, between information he obtained that was public and information that was, and remains, classified." *Id.* at *4. At a minimum, he "surely ha[d] a mental roadmap concerning [defendant] and his activities that was shaped at least in part by his access to confidential government information." *Id.* Any attempt by the attorney to limit his own reliance on that information would thus be unworkable *and* "potentially create a conflict for [the attorney] with his own client[,] were he to find himself in a position where he became aware of information potentially helpful to his client that he is ethically barred from using or disclosing." *Id.* The same is true here, as Nielsen cannot zealously represent his own client while constantly

evaluating whether the confidential information he obtained as a government enforcer is influencing his decisions.

Nielsen's undisputed possession of confidential settlement information—and his promise not to use it—also shows why the district court erred by relying on cases where there was no confidential information at all. Unlike in cases such as *In re National Prescription Opiate Litigation*, 2024 WL 3387288, *10-11 (N.D. Ohio Mar. 18, 2024)—which involved *only* documents that OptumRx was independently "required to [] produc[e] into the MDL" and that could "be obtained through routine discovery"—here all agree that the settlement information remains confidential and cannot legitimately be used by Plaintiffs. The same is true of the other cases Plaintiffs cited below, which did not involve any information beyond documents that were already ordered disclosed. *E.g.*, *Anne Arundel Cnty. v. Express Scripts, Inc.*, 2025 WL 254807, *9 (D. Md. Jan. 21, 2025) ("[a]ll" documents had "been placed into the MDL discovery repository"). In none of those cases did the former government attorney retain confidential information that they simply promised not to use.

Further, the information that Nielsen received during settlement negotiations plainly qualifies as "confidential government information"

because it was received "under governmental authority" and "the government is prohibited by law from disclosing [it] to the public." *See* PRPC 1.11(c). After all, government attorneys "are often in a position to obtain statements from witnesses who, but for their willingness to respond to a government official, might be disinclined to cooperate," and it is "fundamentally unfair for a former government attorney, newly in private practice," to turn that power to private advantage. *Brown v. D.C. Bd. of Zoning Adjustment*, 486 A.2d 37, 45 (D.C. 1984).

In sum, the text of Rule 1.11(c), precedent, and the policies underlying legal ethics obligations all confirm that the district court clearly erred in holding that Nielsen's promise not to share his confidential government information satisfied the Rule.

### B. The district court clearly and indisputably erred in interpreting Rule 1.11(c) as requiring Defendants to disclose the details of the confidential government information in Nielsen's possession.

Second, the district court erroneously concluded that Rule 1.11(c) puts the burden on the party whose confidential information is at risk to *disclose*—to the other side, no less—precisely which information will be used against it and how it will be prejudiced. As the court below acknowledged, Nielsen possesses confidential information concerning Defendants

that he acquired during his government service through settlement negotiations related to this litigation. Appx33. That should have been the end of the inquiry. But the court instead both insisted on more specific details about what confidential information Nielsen possesses and refused to allow Defendants to submit this information *ex parte*.

Courts applying Rule 1.11(c) generally recognize the absurdity of requiring the party whose information is at risk to both disclose which information the other counsel has and anticipate exactly how it will be used to their disadvantage. *E.g.*, *Kronberg*, 2010 WL 1443934, *4 n.6. Such a requirement would both be impractical and undermine the rule.

For starters, government attorneys receive confidential information from numerous sources, making it difficult for a party being investigated to delineate what precise confidential information the lawyer possesses. Here, for example, Nielsen received information—much of it oral—from proffers, interviewing cooperating witnesses, working with other agencies, and engaging in settlement negotiations. Appx14-15. Because Defendants "do not and cannot know the exact contents of the confidential information," they "understandably . . . cannot predict with any

degree of certainty how that information could be used to their disadvantage." *Id.*

Things are no better when the party seeking disqualification was itself the source of the confidential information. There, although a party knows which confidential information it disclosed, the whole reason it is objecting is to prevent that confidential information from being further exposed or misused by the other side. That problem is exacerbated, where, as in this case, there are scores of other defendants who were involved in the investigation. Courts thus recognize a party should not be required to disclose the information it is trying to protect. For example, the court in *Tucker* disagreed that the "defendant ought to do more to show that the information known to [former government attorneys] [wa]s not a matter of public record," and credited defendant's statement that the former government attorneys had been exposed to confidential information. 569 F. Supp. 2d at 839. As another court explained, because "Rule 1.11(c) prohibits representation when the information could be used to the material disadvantage of the other party," the court need not know the "details of the confidential, non-public information" or "try to determine whether the [former government lawyer] has used any of this

information[.]" *Opiate*, 2019 WL 1274555, *6. Indeed, requiring the party seeking disqualification to detail the relevant confidential information to both the court and the opposing party would only "compound[]" the prejudice. *Id*.

Here, once Nielsen conceded he possesses confidential information about Defendants that he received while leading government settlement negotiations related to nearly identical claims and legal theories as are at issue here, no additional detail was needed. At a minimum, Defendants could not be required to disclose those details *to the plaintiffs*, rather than an *ex parte* proffer.

### C. The district court clearly and indisputably erred in determining that Nielsen and Lowey did not need to be disqualified.

The district court's legal errors—creating an exception to Rule 1.11(c) for attorneys that promise not to share confidential government information, and requiring the party seeking disqualification to disclose specific details of the confidential government information it is seeking to protect—led directly to its denial of Defendants' disqualification motion. The court's ruling that there was "no violation" of Rule 1.11(c) drove

its analysis—the Court nowhere discussed any of the other factors that play into ordering disqualification. *See* Appx1-7.

Once it becomes clear that Nielsen violated Rule 1.11(c), those factors conclusively favor disqualification. Indeed, courts consistently recognize that disqualification is necessary where Rule 1.11(c) has been violated—to protect not only the opposing party but the system's basic fairness. *Opiate*, 2019 WL 1274555, *5; *United States v. Villaspring Health Care Ctr., Inc.*, 2011 WL 5330790, at *6 (E.D. Ky. Nov. 7, 2011); *Kronberg*, 2010 WL 1443934, at *5-6; *Tucker*, 569 F. Supp. 2d at 840-841.

Take the factor that seeks to "prevent[] the use of disqualification as a litigation strategy." *Boy Scouts*, 35 F.4th at 160. Here, Lowey (and Humana and Molina) chose to hire Nielsen *precisely because* his "deep knowledge" of the case would "well serve his new private clients" at "trial." Appx86. And rather than implement a screen until Defendants' motion to disqualify was resolved, Lowey made Nielsen lead counsel. In every case involving a violation of Rule 1.11(c), those facts have required disqualifying the attorney and his firm. After all, the rules require "timely screen[ing]," and "[t]here is no way for [Lowey] to timely screen

[Nielsen]" now, when he has worked extensively on the case, leading the charge for his new firm. *Nat'l Prescription Opiate*, 2019 WL 1274555, *5.

Likewise, disqualifying Nielsen and Lowey is necessary to "preserv[e] the integrity of legal proceedings, and prevent[] unfair prejudice." *Boy Scouts*, 35 F.4th at 160. As one court warned, if a former government lawyer "is permitted to seek employment in a matter which he has previously handled for the government, he is in a position either to charge a client a fee because of his knowledge acquired through his former office, in which event he is then being remunerated twice in essence, or if he does not charge a fee therefor, the private litigant fortunate enough to obtain his services places the adverse party at a disadvantage both economically and strategically." *Allied Realty of St. Paul, Inc. v. Exch. Nat'l Bank*, 283 F. Supp. 464, 468 (D. Minn. 1968). These kinds of arrangements undermine the integrity of legal proceedings, result in unfair prejudice, and create an appearance of impropriety that itself warrants disqualification. *Id*.

As other circuits addressing analogous situations have recognized, a court's denial of disqualification based on a clearly erroneous interpretation of the ethical rules warrants mandamus relief. In *Prevezon*, for

example, the Second Circuit found the clear and indisputable standard met where the district court denied disqualification by "shifting the burden to [petitioner] to identify confidences it had shared with its counsel." 839 F.3d at 241. Similarly, in *American Airlines*, the Fifth Circuit held that a "clear and indisputable" right had been violated where the district court denied disqualification by devising an exception to a disqualification rule appearing nowhere in its text. 972 F.2d at 608, 620. Time and again, courts have blocked the very maneuvers that Plaintiffs and their counsel tried here. This Court should do the same.

## II. Defendants have no other adequate means for relief from the district court's order.

Mandamus is Defendants' only path to meaningful appellate review. The disqualification order is not a final decision under 28 U.S.C. § 1291, and the district court denied certification of the order under 28 U.S.C. § 1292(b), *see* Appx28-44. Further, the Supreme Court has held that orders denying motions to disqualify are not appealable under the collateral order doctrine—while expressly suggesting that mandamus can be a proper path to review. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375 & 377 n.13 (1981); *accord Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1118 (3d Cir. 1986).

Given Nielsen's role as lead counsel and the fact that scores of other plaintiffs are closely watching this bellwether, moreover, waiting for appellate review after final judgment is not an "adequate means" for Defendants to obtain relief. *See Cheney*, 542 U.S. at 380 (citation omitted). At that point, Defendants will have already been irreparably harmed by Nielsen's misuse of their confidential information—and, as the district court openly acknowledged, Nielsen's approach will inform the other plaintiffs' "strategies," use of "evidence," approach to "settlements," and "prepar[ation] for trial." Appx44. Indeed, "[a]ny advantage [Nielsen] possesses as a result of [confidential government information] could be put to use at trial. Information once used or exposed would not be forgotten and could be used against [Defendants] on retrial." *Unified Sewerage Agency*, 646 F.2d at 1344. "[A] remedy after final judgment cannot unsay the confidential information that has been revealed," or the best means of employing it. *Prevezon*, 839 F.3d at 237 (quoting *In re The City of New York*, 607 F.3d 923, 934 (2d Cir. 2010)). Accordingly, "the damage would

be irremediable" after trial. *See Merle Norman Cosms., Inc. v. U.S. Dist. Ct., Cent. Dist. of California*, 856 F.2d 98, 101 (9th Cir. 1988).[3]

That is true even if Nielsen honors his "promise" not to disclose Defendants' confidential information received while representing Connecticut, as "[a]dverse use of confidential information is not limited to disclosure." *Prevezon*, 839 F.3d at 238 (quoting *Ullrich*, 809 F. Supp. at 236). "It includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses." *Id.* (quoting *Ullrich*, 809 F. Supp. At 236). Whether purposefully or not, Nielsen's actions leading the first bellwether trial in this MDL will disclose his "strategic insights, such as his knowledge of the strengths and weaknesses of the evidence compiled

[3] Nor is misuse of confidential information the only concern. Concerns over the appearance of impropriety will inevitably be realized during a trial in which Nielsen, as a former government enforcer, turns his former service to private advantage—regardless of the outcome of any appeal. Further, there is the risk that juror bias will infect proceedings if, as is likely, the jury learns that the former prosecutor that led the investigation and litigation for state governments is now leading the case for these private plaintiffs.

against [Defendants]" which Nielsen collected over ten years as a lead government enforcer. *See Villaspring*, 2011 WL 5330790, at *6.

That harm is multiplied here due to the "the nature and size of this litigation [which] would seem to preclude effective appellate review." *Am. Airlines*, 972 F.2d at 609. Indeed, in *American Airlines* the Fifth Circuit granted mandamus to review the denial of a motion to disqualify in complex antitrust consolidated actions for just that reason. *Id.* In sum, "[i]nformation once used" by Nielsen in this MDL's first bellwether trial will not be "forgotten," *see Unified Sewerage Agency*, 646 F.2d at 1344—it will "inform other MDL parties' assessments of likely outcomes involving liability" and "the utility of different strategies and evidence," Appx44. That is manifestly improper, and it can be prevented only if this Court intervenes *now*.

## III. Issuance of the writ is appropriate in these circumstances.

Finally, issuing "the writ is appropriate under the circumstances" here. *See Cheney*, 542 U.S. at 381.

### A. Mandamus review of disqualification rulings is appropriate.

In the wake of *Firestone*'s teaching that, "in the exceptional circumstances for which it was designed, a writ of mandamus from the court of

appeals might be available" to review orders denying disqualification, 449 U.S. at 373, 378 n.13, the Second, Fifth, and Ninth Circuits have all granted mandamus review of such orders. *See Prevezon*, 839 F.3d at 242 (granting the writ and directing the district court to disqualify counsel); *accord Am. Airlines*, 972 F.2d at 628; *Dresser*, 972 F.2d at 541; *Unified Sewerage Agency*, 646 F.2d at 1344 (mandamus review was appropriate to review order denying disqualification). The Federal, Seventh, and Tenth Circuits have likewise granted mandamus in the opposite scenario, reversing orders that erroneously disqualified counsel. *See Shared Memory Graphics*, 659 F.3d at 1342; *Barnett*, 97 F.3d 181 at 184; *Am. Cable Publications*, 768 F.2d at 1197. Each of these decisions confirms that mandamus is appropriate in situations like these.

### B. The district court's disqualification order will irreparably harm Defendants.

This Court has held that issuing the writ is appropriate where there is "a likelihood of irreparable injury." *Howmedica*, 867 F.3d at 401 (citation omitted). Other courts have similarly found that mandamus is appropriate where the consequences of a clearly erroneous disqualification ruling would cause harm—such as allowing confidential information to be disclosed or harming public trust in the legal system—that could not

be undone after trial. *E.g.*, *Prevezon*, 839 F.3d at 239 (warning of lost trust in attorneys); *Am. Airlines*, 972 F.2d at 609 (consequences of disqualification would go beyond the one lawsuit under review). Both concerns apply here.

First, "[a]bsent disqualification, there is a real risk of [Defendants'] confidences being misused." *Prevezon*, 839 F.3d at 237. As discussed above (at 34-37), once Nielsen is allowed to lead the first trial in this MDL while possessing confidential government information about Defendants, there is no way to undo that harm. Rather, it will be multiplied as the other MDL plaintiffs base their own strategies on Nielsen's. And even apart from those downstream effects, this Court has often granted mandamus in analogous situations where a party's confidences were at risk because, once those confidences are breached, it is "too late to rectify the harm." *Haines*, 975 F.2d at 89; *see Bogosian*, 738 F.2d at 591 ("[T]o delay review in such cases is to deny it altogether.").

Second, the importance of interpreting Rule 1.11(c) correctly extends far beyond this litigation. Proper enforcement of that rule is "necessary to protect the public perception of and the public trust in the judi-

cial system," *Kronberg*, 2010 WL 1443934, *5, including "the public perception of the profession," *Unified Sewerage Agency*, 646 F.2d at 1344. And as this Court has long recognized, mandamus review is appropriate when forgoing review would harm "strong public policy," *Bogosian*, 738 F.2d at 592, or "the public's confidence in the judiciary," *see In re Sch. Asbestos Litig.*, 977 F.2d 764, 776 (3d Cir. 1992).

Such is the case here. *See also, e.g.*, *Brown*, 486 A.2d at 45; *Gen. Motors*, 501 F.2d at 649; *Handelman v. Weiss*, 368 F. Supp. 258, 264 (S.D.N.Y. 1973); *Allied Realty*, 283 F. Supp. at 468. As one foundational opinion explained, "one of the reasons for the rule forbidding the former public attorney to act in relation to any matter he passed upon while in government service is to prevent the appearance of evil—i.e., to prevent even the appearance that the government servant may take a certain stand in the hope of later being privately employed to uphold or upset what he had done." *United States v. Standard Oil Co.*, 136 F. Supp. 345, 359 (S.D.N.Y. 1955).

These policy concerns apply with full force here. Nielsen was not just exposed to information related to this case while working in government—he led the entire investigation and litigation for ten years. Left

undisturbed, the district court's erroneous interpretation of Rule 1.11(c) would convey that government officials are free to "cash in" by turning confidential information obtained while in government service to the advantage of their new, private clients—and themselves—thus shaking the public's perception of fairness in this litigation. Only this Court's immediate intervention will avoid that result.

## CONCLUSION

For the foregoing reasons, Defendants' petition for a writ of mandamus should be granted.

Respectfully submitted,


MICHAEL S. SOMMER
STUART A. WILLIAMS
*Wilson Sonsini*
*Goodrich & Rosati, PC*
*31 W. 52nd St., Fifth Floor*
*New York, NY 10019*
*(212) 999-5800*
*msommer@wsgr.com*
*swilliams@wsgr.com*

TRINA A. HIGGINS
ALICE C. VADEN
*Wilson Sonsini*
*Goodrich & Rosati, PC*
*95 S. State St., Ste. 1000*
*Salt Lake City, UT 84111*
*(801) 401-8510*
*thiggins@wsgr.com*
*cvaden@wsgr.com*

*/s/ Steffen N. Johnson*
STEFFEN N. JOHNSON
JEFFREY C. BANK
JOHN B. KENNEY
*Wilson Sonsini*
*Goodrich & Rosati, PC*
*1700 K Street, N.W.*
*Washington, DC 20006*
*(202) 973-8000*
*sjohnson@wsgr.com*
*jbank@wsgr.com*
*jkenney@wsgr.com*

*Counsel for Defendant-Petitioners*
*Mylan Inc. and Mylan Pharmaceuticals, Inc.*

/s/ *Brian T. Feeney*

BRIAN T. FEENEY
*Greenberg Traurig, LLP*
*1717 Arch Street, Suite 400*
*Philadelphia, PA 19103*
*(215) 988-7812*
*brian.feeney@gtlaw.com*

ROGER KAPLAN
AARON VAN NOSTRAND

*/s/ Grant Esposito*

GRANT ESPOSITO
DAVID FIOCCOLA
*Proskauer Rose LLP*
*Eleven Times Square*
*New York, NY 10036*
*(212) 969-3000*
*gesposito@proskauer.com*
*dfioccola@proskauer.com*

CHRISTOPHER ONDECK

*Greenberg Traurig, LLP*
*500 Campus Drive, Suite 400*
*Florham Park, NJ 07932-067*
*(973) 360-7900*
*kaplanr@gtlaw.com*
*aaron.vannostrand@gtlaw.com*

*Counsel for Defendant-Petitioner Dr. Reddy's Laboratories, Inc.*

/s/ John M. Taladay

JOHN M. TALADAY
CHRISTOPHER P. WILSON
EDWARD W. DUFFY
JOANNA B. ADKISSON
MICHAEL A. MUNOZ
*Baker Botts LLP*
*700 K Street NW*
*Washington, DC 20001*
*(202) 639-7700*
*john.taladay@bakerbotts.com*
*christopher.wilson@bakerbotts.com*
*ed.duffy@bakerbotts.com*
*joanna.adkisson@bakerbotts.com*
*michael.munoz@bakerbotts.com*

LAURI A. KAVULICH
*Clark Hill PLC*
*2001 Market Street*
*Suite 2620*

*Proskauer Rose LLP*
*1001 Pennsylvania Ave., NW*
*Suite 600 South*
*Washington, DC 20004*
*(202) 416-5865*
*condeck@proskauer.com*

*Counsel for Defendant-Petitioners Sandoz Inc. and Fougera Pharmaceuticals Inc.*

/s/ George G. Gordon

GEORGE G. GORDON
JULIA CHAPMAN
*Dechert LLP*
*2929 Arch Street*
*Philadelphia, PA 19104-2808*
*(215) 994-2382*
*george.gordon@dechert.com*
*julia.chapman@dechert.com*

D. BRETT KOHLHOFER (APPLICATION FORTHCOMING)
*Dechert LLP*
*1900 K Street NW*
*Washington, D.C. 20006*
*(202) 261-3349*
*d.brett.kohlhofer@dechert.com*

*Counsel for Defendant-Petitioner Lannett Company, Inc.*

/s/ Brian J. Smith

BRIAN J. SMITH*

*Philadelphia, PA 19103*
*(215) 640-8500*
*lkavulich@clarkhill.com*

LINDSAY S. FOUSE
*Clark Hill PLC*
*301 Grant St, 14th Floor*
*Pittsburgh, PA 15219*
*(412) 394-7711*
*lfouse@clarkhill.com*

*Counsel for Defendant-Petitioners Taro Pharmaceuticals U.S.A., Inc., Taro Pharmaceutical Industries Ltd., and Sun Pharmaceutical Industries Inc.*

*/s/ Douglas M. Tween*

DOUGLAS M. TWEEN
JOHN W. EICHLIN
*Linklaters LLP*
*1290 Avenue of the Americas*
*New York, NY 10104*
*(212) 903-9072*
*douglas.tween@linklaters.com*
*john.eichlin@linklaters.com*

*Counsel for Defendant-Petitioner Strides Pharma Inc.*

JORDANNE M. STEINER
*Wilson Sonsini*
*Goodrich & Rosati, PC*
*1700 K Street, N.W.*
*Washington, DC 20006*
*(202) 973-8000*
*brian.smith@wsgr.com*
*jsteiner@wsgr.com*
**Admitted to practice only in Illinois & Maine*

ANGELA L. BROWN
*Wilson Sonsini*
*Goodrich & Rosati, PC*
*31 W. 52nd St., Fifth Floor*
*New York, NY 10019*
*(212) 999-5800*
*angela.brown@wsgr.com*

*Counsel for Defendant-Petitioner Mayne Pharma Inc.*

*/s/ J. Clayton Everett, Jr.*

J. CLAYTON EVERETT, JR.
WILLIAM S.D. CRAVENS
Y. FRANK REN
*Morgan, Lewis & Bockius, LLP*
*1111 Pennsylvania Avenue, NW*
*Washington, DC 20004*
*1.202.739.3000*
*clay.everett@morganlewis.com*
*william.cravens@morganlewis.com*
*frank.ren@morganlewis.com*

STEPHEN D. LABRECQUE
*Morgan, Lewis & Bockius, LLP*
*1 Federal Street*
*Boston, MA 02110*
*1.617.341.7700*
*stephen.labrecque@morganlewis.com*

HARVEY BARTLE IV
*Morgan, Lewis & Bockius, LLP*
*2222 Market Street*
*Philadelphia, PA 19103*
*1.215.963.5000*
*harvey.bartle@morganlewis.com*

*Counsel for Defendant-Petitioners Perrigo Company plc and Perrigo New York, Inc.*

DATED: June 1, 2026

## COMBINED CERTIFICATIONS

1. Certificate of Bar Membership

I hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2. Certificate of Compliance with Rule 21(d)(1) and LAR 31.1(c)

This brief complies with the type-volume, typeface, and typestyle requirements of Federal Rules of Appellate Procedure 21(d)(1) and 32(f), because it contains 7,757 words, exclusive of the cover, tables, disclosure statements, signature block, and certificates, and has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

I further certify that the electronic submission was subjected to a virus scan using Crowdstrike, version 7.35.20709.0, and no virus was detected.

3. Certificate of Service

I hereby certify that on June 1, 2026, I caused a true and correct copy of the foregoing to be served via Electronic Mail and First-Class Mail upon the following, pursuant to the Court's orders in Case No. 16-MD-2724, appointing liaison counsel upon:

Dianne M. Nast
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
dnast@nastlaw.com

*Liaison and Lead Counsel for the Direct Purchaser Plaintiffs*

Roberta D. Liebenberg
Paul Costa
Fine, Kaplan, and Black, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
rliebenberg@finekaplan.com
pcosta@finekaplan.com

*Liaison and Lead Counsel for the End-Payer Plaintiffs*

William J. Blechman
Sperling Kenny Nachwalter LLC
1441 Brickell Avenue
Suite 1100
Miami, FL 33131
wjb@sperlingkenny.com

*Liaison Counsel for Direct Action Plaintiffs and Counsel for the Kroger Direct Action Plaintiffs*

Chul Pak
Wilson Sonsini
Goodrich & Rosati, PC
31 W 52nd St., Fifth Floor
New York, NY 10019
cpak@wsgr.com

Sheron Korpus
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
skorpus@kasowitz.com

Devora W. Allon
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
devora.allon@kirkland.com

Alison Tanchyk
Morgan, Lewis & Bockius, LLP
600 Brickell Ave., Suite 1600
Miami, FL 3313
alison.tanchyk@morganlewis.com

*Defendants' Liaison Counsel*

I hereby further certify that on June 1, 2026, I caused a true and correct copy of the foregoing to be served via Electronic Mail and First-Class Mail upon the following, lead counsel for each party in E.D. PA. Case Nos. 20-CV-00695, 18-CV-03299, 19-CV-04862, 20-CV-06303:

Peter D. St. Phillip, Jr.
W. Joseph Nielsen
Raymond P. Girnys
Alexis H. Castillo
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
pstphillip@lowey.com
jnielsen@lowey.com
rgirnys@lowey.com
acastillo@lowey.com

Matthew A. Cartwright
LOWEY DANNENBERG, P.C.
100 Front Street, Suite 520
West Conshohocken, PA 19428
mcartwright@lowey.com

*Counsel for Plaintiffs Humana Inc. and Molina Healthcare Inc.*

Ilana H. Eisenstein
DLA PIPER LLP (US)
1650 Market Street, Suite 5000
Philadelphia, PA 19103
ilana.eisenstein@dlapiper.com

*Counsel for Defendants Pfizer Inc. and Greenstone LLC*

Seth Davis
KASOWITZ LLP

1633 Broadway
New York, NY 10019
sdavis@kasowitz.com

*Counsel for Defendants Actavis Elizabeth LLC, Actavis Holdco U.S., Inc., Actavis Pharma, Inc., Barr Pharmaceuticals, Inc., Pliva, Inc., and Teva Pharmaceuticals USA, Inc.*

Mary Pat Brogan
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
mbrogan@bakerlaw.com

*Counsel for Defendants Heritage Pharmaceuticals, Inc. and Emcure Pharmaceuticals Ltd.*

Donald W. Hawthorne
CARTER LEDYARD & MILBURN LLP
28 Liberty Street
New York, NY 10005
hawthorne@clm.com

*Counsel for Defendant Breckenridge Pharmaceutical, Inc.*

Devora W. Allon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
devora.allon@kirkland.com

*Counsel for Defendant Upsher-Smith Laboratories, LLC*

Jason R. Parish
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street, NW, Suite 300
Washington, D.C. 20006
jason.parish@bipc.com

*Counsel for Defendant Zydus Pharmaceuticals (USA) Inc.*

Heather P. Lamberg
FRESHFIELDS US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
heather.lamberg@freshfields.com

*Counsel for Defendant Camber Pharmaceuticals, Inc.*

Colin R. Kass
PROSKAUER ROSE LLP
1001 Pennsylvania Ave, NW
Washington, DC 20004
ckass@proskauer.com

*Attorneys for Lupin Pharmaceuticals, Inc*

Craig M. Reiser
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, New York 10011
creiser@axinn.com

*Counsel for Defendant Alvogen, Inc.*

Adam C. Hemlock
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
(212) 310-8000
Adam.Hemlock@weil.com

*Counsel for Defendant Torrent Pharma Inc.*

Robin P. Sumner
TROUTMAN PEPPER
LOCKE LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
robin.sumner@troutman.com

*Counsel for Defendants Amneal Pharmaceuticals, Inc., Amneal Pharmaceuticals LLC, Hikma Pharmaceuticals USA, Inc., Hikma Labs, Inc., Impax Laboratories, LLC, West-Ward Pharmaceuticals Corp., and West-Ward Columbus Inc.*

Jeremy A. Rist
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
jeremy.rist@blankrome.com

*Counsel for Defendant Jubilant Cadista Pharmaceuticals, Inc.*

W. Gordon Dobie
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
wdobie@winston.com

*Counsel for Defendant Ascend Laboratories, LLC*

Robin D. Adelstein
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019-6022

robin.adelstein@nortonrosefulbright.com

*Counsel for Defendants Bausch Health Americas, Inc.; Bausch Health US, LLC; and Oceanside Pharmaceuticals, Inc.*

Steven E. Bizar
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
steven.bizar@dechert.com

*Counsel for Citron Pharma, LLC*

Stephan Matanovic
Bailey Duquette P.C.
57 N. 2nd Street, 2nd Floor
Philadelphia, PA 19106
stephan@baileyduquette.com

*Counsel for Defendant G&W Laboratories, Inc.*

Benjamin Diessel
Wiggin and Dana LLP
One Century Tower
265 Church Street
New Haven, CT 06510
bdiessel@wiggin.com

*Counsel for Defendant Aurobindo Pharma USA, Inc.*

Peter G. Siachos
Gordon Rees Scully Mansukhani LLP
677 King Street, Suite 450
Charleston, SC 29403

psiachos@grsm.com

*Counsel for Defendant Epic Pharma, LLC*

Robert W. Manoso
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
rmanoso@mofo.com

*Counsel for Defendant Glenmark Pharmaceuticals Inc., USA*

Donna M. Welch, P.C.
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654
*donna.welch@kirkland.com*

*Counsel for Defendant, Novartis AG*

April Williams
Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Avenue, N.W.
Washington, DC 20037
april.williams@wilmerhale.com

*Counsel for Apotex Corp.*

I further certify that on June 1, 2026, I additionally caused a true and correct copy of the foregoing to be sent to the electronic communication listservs set up for service in 16-MD-2724:

mdl2724plaintiffsleadsetc@ag.ny.gov
*Listserv for Plaintiffs' Counsel*

MDL2724AllDeftsService@groups.troutman.com
*Listserv for Defendants' Counsel*

I further certify that on June 1, 2026, I caused a true and correct copy of the foregoing to be sent via Federal Express Next Business Day Delivery to the presiding district judge at the following address:

The Honorable Cynthia M. Rufe
United States District Court for the Eastern District of Pennsylvania
12614 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Dated: June 1, 2026

*/s/ Steffen N. Johnson*
Steffen N. Johnson